Matter of Ian G. v Administration for Children's Servs. (2020 NY Slip Op 00986)





Matter of Ian G. v Administration for Children's Servs.


2020 NY Slip Op 00986


Decided on February 11, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 11, 2020

Friedman, J.P., Renwick, Kern, Oing, JJ.


78/15 10988A -9/02/15A -4719/17 10988

[*1] In re Ian G., and Others, 
Simon G., Respondent-Appellant,
v
Administration for Children's Services, Petitioner-Respondent. 
Victoria G., Nonparty Respondent.
Victoria G., Petitioner-Respondent,
 
v
Simon G., Respondent-Appellant.


Bruce A. Young, New York, for appellant.
James E. Johnson, Corporation Counsel, New York (Julie Steiner of counsel), for Administration for Children's Services, respondent.
Simpson Thacher & Bartlett LLP, New York (Courtney Gabrielle Skarupski of counsel), for Victoria G., respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Raymond E. Rogers of counsel), attorney for the child.



Order of disposition, Family Court, New York County (Clark V. Richardson, J.), entered on or about July 6, 2018, insofar as it brings up for review a fact-finding order of the same court and Judge, entered on or about April 19, 2017, which found, after a hearing, that the father, respondent Simon G., neglected the subject children, unanimously affirmed, without costs. Appeal from fact-finding order, unanimously dismissed, without costs, as subsumed in the appeal from the order of disposition.
Family Court properly denied the father's request to appear by phone for the final day of hearings. The record reflects the court's efforts to accommodate the father's needs throughout the proceedings, for instance, ensuring that hearings did not take place in the morning, per his request. The father does not explain why he waited until two days before the April 20, 2018 hearing to make the motion, and his delay was unreasonable. His request did not arise from an emergency, but because he claimed to have become homebound due to mobility and related issues, issues he had been experiencing since at least the month before, as shown by the March 14, 2018 supporting letter from his doctor.
The court reasonably found these grounds inadequate. The father had appeared in person on numerous prior court dates and it was unclear when or if his health had worsened. Moreover, his counsel was present on April 20, 2018 and prepared to actively participate on his behalf, and [*2]his right to be present was not absolute (Matter of Neamiah Harry-Ray M. [Donna Marie M.], 127 AD3d 409 [1st Dept 2015]; Matter of Kalantarov v Kalantarova, 109 AD3d 471 [2d Dept 2013]).
Even were we to consider the father's Americans with Disabilities Act-related arguments, raised for the first time on appeal, we would reject them. He cites evidence of his physical and psychiatric issues to bolster his claim that he was disabled, but this undercuts his position, as those issues did not affect his ability to appear in court any time before April 20, 2018.
Nor does he make the requisite showing to support a finding of an ADA violation here. He did not show his health issues constituted a disability for ADA purposes or that the court actually denied him an opportunity to participate, when his counsel was present and actively participated on his behalf (Matter of Lacee L. [Stephanie L.], 32 NY3d 219, 227 [2018]).
The events of October 8, 2015 constituted excessive corporal punishment, and ACS proved neglect by a preponderance of the evidence (Family Ct Act § 1012[f][i][B]). After presiding over extensive testimony, the court had ample grounds to conclude the father created a "reign of terror" in his household. The mother's testimony about October 8, 2015 alone, testimony that was, moreover, consistent with Ariella's and Adam's statements to ACS, furnished a solid basis for the court's determination. The father's violence towards the family dog terrified the children, and when Ariella reacted to his having thrown the dog to the floor, he viciously hit her repeatedly on her back, shoulder, and head, producing red welts and causing her to start sobbing (see e.g. Matter of David R. [Carmen R.], 123 AD3d 483, 484-485 [1st Dept 2014]). The father acknowledges having hit her, but his efforts to justify his behavior as reasonable parenting reveal a lack of judgment as to the extremity of his reactions, and an absence of insight as to why the upsetting situation arose in the first place: namely, his sudden violence towards the dog.
The determination of neglect is all the more reasonable against the backdrop of volatile, violently charged behavior the father exhibited towards and around his children. Evidence of his sudden eruptions of rage, such as ripping apart a keyboard on which his son was playing, flipping over a dining room table, slapping Ariella's buttocks and legs after trapping her by stepping on her bathrobe's ties, or singlehandedly wrenching the door off of her bedroom, taken together with the evidence of what occurred on October 8, 2015, underscore the propriety of the determination (see e.g. Matter of Genesis F. [Xiomaris S.], 121 AD3d 526 [1st Dept 2014]).
The father's claim that his mental health issues did not constitute neglect are largely beside the point, since the main focus of the court's neglect determination was the physical and psychological abuse he wrought rather than his own mental health issues. The fact-finding order stated he was only "to some degree," influenced by his bipolar disorder and anxiety disorder, and found it "unclear" whether the disorders caused his behavior. 
The record belies the father's claim that the children's out-of-court statements were not corroborated. The mother's testimony, based on her own first-hand observations and experiences, provided ample corroboration. Moreover, she testified twice, once at fact-finding and again at disposition, and her testimony was both internally consistent and consistent with her children's statements to ACS (Family Ct Act § 1046[a][vi]; Matter of Ninoshka M. [Liz R.], 125 AD3d 567 [1st Dept 2015]; Matter of David R., 123 AD3d at 484).
The father states the court should not have found ACS credible, on grounds that it called only the mother as its witness and relied on case notes that, in his view, were unreliable. However, ACS's caseworker was also a witness for ACS. Moreover, he offers no support for his conclusory statement about the reliability of the case notes. As the caseworker testified, the records were kept in the ordinary course of ACS's business and created at or around the time of the events recorded therein, and, beyond blanket denials unsupported by any other proof, the father offers no evidence to show the records were inaccurate in any respect.
We have considered the father's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 11, 2020
CLERK